# CITY OF ST. LOUIS v. FRED MEYER, Appellant.

### In Banc, July 1, 1911.

1. **COMPLAINT: Ordinance Must Be Alleged.** A complaint should specifically point out the ordinance defendant is charged to have violated.

2. **LATER ORDINANCE: Shown by Its Number.** Where the date of the approval of an ordinance is not shown, and there is no method of determining whether or not it is a later ordinance than another defendant is charged with violating, except that it seems to bear a later serial number, the court will not assume that it is a later ordinance. An ordinance is matter of proof.

3. **———: Different Offenses: No Replacement.** An ordinance forbidding one to have in his possession, with intent to sell, milk adulterated by mixing with it any substance so as to lower or depreciate its strength, is not repealed or annulled by a later ordinance providing a standard for saleable skim milk with reference to milk solids—fatty and non-fatty—but silent on adulteration by water or otherwise. The two are not in conflict; and hence a defendant convicted of having in his possession, with intent to sell, a mixture of skim milk and water, cannot be heard to complain that he ought to have been prosecuted under the later ordinance.

4. **LATER ORDINANCE: Milk Adulteration: Standard of Solids Fixed by Ordinance: Exclusive.** A city by enacting an ordinance which seeks to prohibit the sale of impoverished milk by requiring it to have a certain percentage of fatty and non-fatty solids, is not thereby precluded from enacting another ordinance which forbids the mixing of water with milk. A defendant charged with adding water to milk cannot escape conviction by showing that the milk, after the water was added, still contained a larger per cent of milk solids than another ordinance required.

5. **———: ———: Sale and Possession: No Conflict in Ordinances.** An ordinance which denounces the sale or offer for sale of milk adulterated with water or other substances or any milk product from diseased cows, and another ordinance which prohibits the possession of adulterated milk, with intent to sell, are not in conflict. If a defendant is prosecuted, for the one act, under the latter ordinance, he cannot complain that he was not prosecuted under the former.

6. **CONTEMPORANEOUS ORDINANCES: Repugnant: Milk Adulteration.** Two ordinances of the same date, one interdicting traffic in milk containing a substance "which is poisonous or

St. Louis v. Meyer.

injurious to health," and the other forbidding any person from having in his possession, with intent to sell, milk with which has been mixed a substance "so as to lower or depreciate the strength, quality or purity" of the milk, are not in such conflict as to bar a convicting of a defendant for having in his possession, with intent to sell, a mixture of water and milk. Water is not a substance poisonous or injurious to health, and putting water in milk is not putting therein a substance poisonous or injurious to health.

7. **ORDINANCE: Conflicting With Statute: Not Raised at Trial.** An assignment that the ordinance of the city under which defendant was convicted is in conflict and inconsistent with an act of the Legislature and an act of Congress cannot be considered on appeal unless the conflict was pointed out in the trial court, a decision invoked thereon and an exception to the ruling saved.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Benjamin J. Klene*, Judge.

AFFIRMED.

*Wm. L. Bohnenkamp* and *E. F. Stone* for appellant.

(1)    This case is brought under ordinance 24297, for adulterating skimmed milk with "water." Said ordinance is a general one, and applies to all "milk and cream" offered for sale in St. Louis. It also applies generally to the sale or offering for sale of all kinds of milk when adulterated by mixing any substance or substances whatever with it. It fixes no standard for strength, quality or purity for milk, and certainly not for skimmed milk. It also applies only to methods of adulteration not prohibited by the Revised Code of St. Louis. Therefore, this prosecution was improperly brought under it, for the reasons following: Said ordinance was approved, March 26, 1909. Defendant offered in evidence Ordinance 24582, which was approved Oct. 23, 1909. Therefore, the latter was approved about six months after the former. The latter ordinance was enacted for the specific purpose and particular object of providing standards of strength, quality and purity

for skimmed milk. It is a general ordinance applying specially to the sale of a single commodity, and nothing more. It fixes standards for it alone, and makes regulations for its sale alone. It expressly strikes out, and thereby repeals the provision of the code, which applied only to standards and regulations for the sale of skimmed milk. It expressly limits its provisions to the sale of skimmed milk, for it provides for its sale "notwithstanding the provisions" of the section of the Revised Code applying to the sale of whole milk. It also defines skimmed milk, and distinctly provides that it "may be lawfully sold as herein provided and not otherwise." It also expressly provides that skimmed milk shall not be sold or offered for sale "unless it show on analysis not less than 9.25 per cent of milk solids and 8.50 per cent of milk solids not fat." And the title expressly shows that it is an ordinance "in relation to the sale and custody of skimmed milk." In short, ordinance 24297 is general and might include the matter in this case, were said ordinance standing alone, and defendant might be prosecuted thereunder. But, ordinance 24582, being one that applies specifically and particularly to the matter involved herein, and thereby constituting an exception to said general ordinance, the defendant, if prosecuted at all, should be proceeded against under this exception. (2) This prosecution is brought under the wrong ordinance, and for the reason of the existence of a different ordinance, Revised Code of 1909, sec. 555. Said section was offered in evidence by defendant, and it also applies specifically and particularly to the adulteration of milk with "water," whilst the ordinance under which this prosecution was brought, applies generally to the adulteration of milk with "any substance or substances." (3) Said prosecution is wrong and should be dismissed, for the reason that it clearly appears from the existence of said sections 499 and 555 or either of them, and the evidence in this case, that said ordinance 24297, sec. 2, positively

prohibits such cases, as the one at bar, being brought under its provisions. It only includes and applies to cases of adulteration of milk, other than those prohibited by the Revised Code 1907; and sections 499 and 555 of Code apply to just such cases as the one at bar, as shown conclusively by the allegations of the complaint and the evidence. Section 555 must be regarded as an exception to this general ordinance 24297, as applying to adulteration by "water" alone. City v. Wortman, 213 Mo. 143; Ruschenberg v. Railroad, 161 70; Lamoine v. St. Louis, 72 Mo. 406; Charter of St. Louis, art. 3, sec. 28; Revised Code, 1907, p. 339.

*Lambert E. Walther* and *A. H. Roudebush* for respondent.

(1) 1st. The two ordinances (24297 and 24582) are not in conflict and there is no room for the application of the principle that a special statute may constitute an exception to a general statute including the same subject-matter. 2nd. Ordinance 24582 does not aid appellant because the record does not show that the milk in question conformed thereto. 3d. There is no conflict between the ordinances because ordinance 24582 does not authorize adulteration of skimmed milk. St. Louis v. Klausmeier, 213 Mo. 127. (2) The prosecution could not be based on Sec. 555, Revised Code, because that section does not prohibit the offense here charged. Sec. 555 is incorporated in ordinance 24297 by reference and there can be no conflict. (3) There is no conflict between ordinance 24297 and Sec. 499, for the reason that they prohibit different offenses. (4) Ordinance 24297 and ordinance 24295 do not cover the same ground and are not in conflict. Each is but a repetition of provisions in a State statute and in a Federal statute. Laws 1907, p. 239, sec. 4, cl. 1, 5; Act of Congress, June 20, 1906, sec. 7. (5) If there is any conflict, ordinance 24295 must be construed as an exception to ordinance 24297 and both will be upheld.

Gilkeson v. Railroad, 222 Mo. 204; Sutherland, Stat. Cons., sec. 217.

·LAMM, J.—Defendant, found guilty and fined $25 for violating a milk ordinance, appeals.

The case is one of a group to test the validity of one or another of the milk ordinances of St. Louis in one or another phase. It is a companion case to that of St. Louis v. Ameln, handed down at our present sitting, and reported at page 669 of this Report. While differing in points of detail from that case, it has propositions in common. Where propositions are common reference will be made to the Ameln case, which should be read with this, since common propositions will receive no reconsideration.

The complaint is under ordinance 24297, as was that in Ameln's case. While its form is criticized in motions below as vague, uncertain and as stating no offense in particulars discussed in Ameln's case, yet defendant's brief does not renew the criticisms here, and the complaint need not be reproduced. Defendant is charged with having in his possession, with intent to sell and expose for sale, skim milk mixed with water so as to lower and depreciate its strength and quality, contrary to the ordinance in such case made and provided, as was Ameln.

The city put on the stand an inspector, who testified he took a sample of skim milk from defendant's wagon, at a time and place charged in the complaint, and turned it over to an assistant of the city chemist. The chemist took the stand and testified he analyzed the sample and found it contained "added water."

Such was the oral testimony.

The city offered in evidence ordinance 24297. [ *Vide* Ameln's case for its terms.]

Defendant offered in evidence ordinance 24582, reading: "No skimmed milk shall be sold, kept offered or exposed for sale, stored, exchanged, transported,

conveyed, carried or delivered, or with such intent as aforesaid be in the care, custody, control or possession of anyone, unless it show on analysis not less than: One. Nine and one-quarter per cent of milk solids. Two. Eight and one-half per cent of milk solids, not fat.''

(*Nota bene*: No date of approval is shown by the record. Hence, unless controlled by the number, we may not know whether it is elder or younger than ordinance 24297.)

He next put in sections 499 and 505 of the Revised Code of St. Louis, 1907. [See Ameln's case for their terms.]

He next offered section 555 of said Code, reading: "Sale of adulterated milk forbidden.—Whoever shall sell or offer for sale any milk adulterated with water or other substance, or any milk produced from diseased cows, shall be deemed guilty of a misdemeanor.''

He next put in ordinance 24295, approved March 26, 1909 (*Nota bene*: the date of approval of the ordinance is the same as that of ordinance 24297, supra), reading: "Sec. 1. Any person, firm or corporation who shall sell, expose for sale, exchange, deliver, dispose of or transport, convey or carry, or with any such intent as aforesaid have in his or her possession, any milk or cream having therein, or containing any added substance which is poisonous or injurious to health, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than twenty-five dollars nor more than one hundred dollars for each and every offense.''

Elaborate motions to quash, for a new trial and in arrest, were filed and overruled, due exceptions being saved. It would but pad the opinion to swollen proportions to set them forth. For our purposes, it is enough to say that the single and separate propositions announced by learned counsel for defendant in their brief, and upon which they rely for reversal, were presented and decided below; and that exceptions

to the decisions, *nisi*, well preserved in the record, are properly here for review.

Those propositions are:

(a). That defendant should have been prosecuted under ordinance 24582 and not under ordinance 24297 (and herein that the former is a later ordinance than the latter).

(b). That if not prosecuted under ordinance 24582, he should have been prosecuted under section 555 of the municipal code.

(c). That if not prosecuted under section 555, he should have been prosecuted under section 499 of the municipal code (and herein that ordinance 24297, *ex vi termini*, prohibits a case like the instant one from being brought under its provisions).

(d). That ordinance 24297 is invalid because it fails to repeal in express terms ordinance 24295 (and herein that they conflict and are repugnant to each other).

(e). That their repugnancy and conflict make them both null and void (and herein that a study of them and a comparison with the acts of the Legislature and the acts of Congress will show an "abominable condition" of milk regulations—conflicts, inconsistencies and contradictions so serious and numerous as to justify a judicial condemnation of them all).

Of these *seriatim*.

I. *Of proposition "a."*

It goes as of course that when a citizen is charged with the breach of a municipal regulation the complaint should put its finger on the ordinance breached. Certainty in that regard is a *sine qua non*. A false call is worse than none at all. It deceives and misleads defendant. The law, moving with sober dignity, tolerates no tricks of that sort. Therefore, if there be a false call for the ordinance in the complaint, absent amendment, the prosecution is halted and must fall. So, too, if the

235 Sup.—45

ordinance alleged to be breached has been superseded or repealed by a later ordinance there can be no breach, for the ordinance is *nil*; hence there is nothing to break. Out of nothing, nothing comes.

Based on such premises, defendant argues he is not guilty under ordinance 24297, the one charged, but is guilty, if at all, under 24582. Further, that the latter is later than the former; hence, as the *newest*, becomes the *controlling* legislative utterance.

Of the last branch of the contention, it would be sufficient to say that the date of the approval of 24582 is not shown by the record and we may not know whether it took effect after 24297 or before. If the ordinances of St. Louis are numbered and if a higher serial number always means a later ordinance, then we have some evidence on that score for we have the number. But a court that may not take judicial cognizance of any ordinance whatever unless it be introduced in evidence can hardly take judicial cognizance of the significance of an ordinance number, as bearing on the date of the passage and approval of a municipal law, absent evidence (as here) tending to show that the higher the number the younger the law. In this view of it, one of the theories of defendant is afield.

However, there is no need to let proposition "*a*" ride off, in part, on such technical view. Let it stand on its merits. We shall assume, as counsel on both sides do, that ordinance 24582 is a later law. The pivotal question then is: Does it cover the offense charged—that is, do both ordinances occupy the same territory and deal with the same phase of the subject? We do not think so. Ordinance 24582 provides a standard for saleable skim milk with reference to milk solids—fatty and non-fatty—but is silent on adulteration by water or otherwise. Therefore, it is not in conflict with the elder law, ordinance 24297, which, *inter alia*, denounces having in possession with intent to sell any milk, adulterated by mixing with it any substance or substances

so as to lower or depreciate its strength.   [St. Louis v. Ameln, supra.]

We are not quite sure we grasp the rounded scope and full force of the contention of learned counsel in this connection.   Has a milkman a right, vested or natural, to put water in his milk, or have in his possession watered milk, with intent to sell the same for domestic use?   Counsel, *arguendo*, would not stand for that mischievous proposition, thus nakedly put.   Again: Is it the present policy of the city's law to encourage, countenance or permit watering milk or the possession of watered milk intended for sale for domestic use? Counsel would not stand, *arguendo*, for that bad proposition either.   And yet, as we see it, they contend quite earnestly that the standard for skim milk having been fixed as to solids by ordinance 24582, such standard is the *only* one recognized by the law.   All of which, when brought to book, means by necessary inference that the standard permits water; *ergo*, watered milk is countenanced by the law.   In this view of it, while the right, natural or legal, to water milk for sale is repudiated when badly put, yet a position is maintained which in roundabout or indirect way is bound to reach to that very end.   There is a legal maxim, *expressio unius est exclusio alterius*—that is, the express mention of one thing implies the exclusion of another.   Seizing on that maxim for use, it is argued that the standard fixed by ordinance 24582 excludes any other.   That might be true if no other standard was fixed in any other ordinance.   But the fertility of the legislative mind is not confined or restricted to expressing everything relating to the same subject-matter in one law at one time.   A law at the outset may be too short or too narrow, too long or too broad; hence it is subject to reconsideration by the legislative mind.   It may be lengthened, broadened, shortened or narrowed.   So laws are passed to meet new or changed conditions.   Astuteness in the law-breaker may be met by astuteness in the law-maker.

One law may supplement another, and, when such is a fact, the duty of the court is to construe them together, so far as possible, as a harmonious and symmetrical body of law, so that all of them may stand as related and cognate and none of them perish by construction, unless there is clear repugnance, irreconcilable conflict or complete overlapping. As said heretofore no such repugnancy or conflict exists between ordinances 24297 and 24582—one of them provides a given standard for nutritive elements, solids, in milk. That ordinance strikes at milk impoverished below the standard. Milk impoverished in solids exists by the act of man or because the cow is poor or her food is poor. The other strikes at adulterated milk—milk diluted and weakened by the addition of water. Both can stand together, both fill a useful office.

The point is ruled against defendant.

II.   *Of proposition "b."*

Defendant invokes section 555 of the municipal code (*quod vide*) and insists he should have been prosecuted under that section. That section denounces the sale or offer for sale of milk adulterated with water or other substances or any milk product from diseased cows; whereas ordinance 24297 denounces the *possession* of adulterated milk with the intent to sell. It is conceivable that the same milkman might violate both those municipal laws by one act. For instance: He might have guilty possession and he might make or offer to make the guilty sale at the same time. If prosecuted simultaneously under both ordinances for the one act to the point of conviction, he might complain. When we have such a case, we can deal with it. Or if prosecuted under one and convicted, and the city should undertake, by splitting one collective or composite act into two parts, to prosecute him again under the other, he might have a grievance worthy the ear of a court. The law should be administered with common sense and

with no spirit of oppression or overrefinement. But no such case is here. The ordinance provisions as'they stand written are not in conflict. The latter law in order to fill its office would not have to repeal the former. Both may stand, and, under the doctrine of the Ameln case, the point is ruled against defendant.

III.  *Of proposition "c."*

This proposition is identical with one decided in the Ameln case and will be ruled the same way, viz., against defendant.

IV.  *Of proposition "d."*

Two ordinances were approved on the same day— one, 24297, under which defendant is prosecuted; the other, 24295. They were presumably passed at the same legislative sitting. They were likely under consideration at the same time, and certainly pertained to the same general subject-matter. Ordinance 24295 interdicts the traffic in milk containing a substance "which is poisonous or injurious to health." Water is not a substance poisonous or injurious to health *qua* water; therefore, putting water in milk or having possession of watered milk is not putting therein a substance poisonous or injurious to health, or having possession of milk so dosed and doctored. If defendant were prosecuted under that ordinance a conviction could not be sustained on the charge made here. We see no repugnancy between the two ordinances. One merely supplements the other; the latest does not repeal the earlier and the charter provision forbidding repeal by implication is not applicable; therefore, both may stand.

Accordingly, the point is ruled against defendant.

V.  *Of proposition "e."*

If there were conflicts, inconsistencies and contradictions between the ordinances considered and the State laws or the laws of Congress pertinent to the

individual case held in judgment, making the ordinances void, as urged under the collective proposition now up, it was for defendant to point out with particularity his grievances, invoke a decision, *nisi*, thereon, save his exception and bring the identical point here in his brief for review. The generality of the grievance put to us forbids consideration. All separate points have been heretofore decided in other paragraphs. It may be that the ordinances might be improved, clarified, revised and condensed. It may be that individual hardships arise in enforcing these ordinances that might be obviated by a proper city inspection of all milk that comes into it for sale; so that the milkman, unable to analyze his own milk, would be protected from imposition by the producer or shipper by the same stroke that protects the consumer. Whether such plan is practicable or wise is for the municipal assembly to decide in the first instance. Whether it would be legal is for the courts to decide when the municipal assembly has put such regulation on its ordinance book. But it would add nothing to the cause of jurisprudence to consider (by way of anticipation) matters not before us.

The point now up—an omnibus and composite one—is ruled against defendant.

That ruling disposes of the case and leads to an affirmance of the judgment. It is so ordered. All concur, except *Valliant, C. J.*, who dissents.